IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMIN DANCY, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, et al., | : | No. 17-1484 |
| Defendants. | : | |



## **MEMORANDUM**

Plaintiff Amin Dancy alleges that Defendant United States of America violated the Federal Tort Claims Act, 28 U.S.C. § 2674 ("FTCA"), when it negligently: provided medical care (Count I); established prisoner medical care policies (Count II); and applied those policies (Count III). See Second Am. Compl. ("SAC") (doc. 33) ¶¶ 94–113. Dancy also alleges, pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), that: Defendants Christine Nelson and Antonio Fausto unconstitutionally deprived him of adequate medical care (Count IV); and Defendant Odeida Dalmasi maintained policies that created an unreasonable risk that such constitutional violations would occur (Count V). Id. ¶¶ 114–130.

Defendants seek to dismiss all but the first count, arguing: (1) Dancy failed to exhaust his administrative remedies under both the FTCA and the Prison Litigation Reform Act ("PLRA"), (2) his prison policy challenges are barred by the FTCA's discretionary function exception, and (3) he has failed to properly allege a constitutional claim against Nelson, Fausto, and Dalmasi. See Def. Partial Mot. to Dismiss (doc. 35); Def. Br. 1.

For the reasons explained below, Defendants' motion is granted.

I.   Standard of Review

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal when a plaintiff has failed to establish subject matter jurisdiction. See Gould Elecs. Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000). "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Mortenson v. First Fed. Sav. & Loan Ass'n, 549 F.3d 884, 891 (3d Cir. 1977).

A complaint may also be dismissed for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)). When the factual allegations are insufficient to "raise a right to relief above the speculative level," the motion to dismiss should be granted. West Run Student Housing Assocs., LLC, v. Huntington Nat'l Bank, 712 F.3d 165, 169 (3d Cir. 2013) (quoting Twombly, 550 U.S. at 555). "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

II.  Facts

The following facts are accepted as true:

Dancy is incarcerated at the Federal Detention Center Philadelphia ("FDCP"), a Federal Bureau of Prisons ("BOP") institution. SAC ¶ 4. Dancy sought medical attention for his left knee in April 2014 while incarcerated in Louisiana, and in July 2014, a specialist determined Dancy needed surgery. Id. ¶¶ 10, 12. Dancy was transferred to FDCP before the surgery. Id. ¶

2

14. In November 2015, a new orthopedic surgeon noted Dancy would "probably require approximately 2 weeks of protection after his surgery [then] gradual resumption of activity with therapy type exercises." Id. ¶¶ 20–21, Ex. A. Dr. Dalmasi, the FDCP Medical and Clinical Director, reviewed the surgeon's notes. Id. ¶¶ 5, 22, Ex. A.

On January 8, 2016, Dancy underwent knee surgery. Id. ¶ 23. His surgeon provided rehabilitation guidelines, which recommended Dancy ice his knee five times per day to reduce pain and swelling. Id. ¶¶ 24–25, Ex. B. Although one goal was to "protect the knee from overstress," the guidelines also told Dancy he could "bear weight and walk on the leg as [he was] able unless otherwise directed." Id. at Ex. B.

Dancy then requested a bottom bunk on the bottom tier of his unit, id. ¶ 30, but was instead assigned a second-floor cell that required him to use stairs, id. ¶ 33. Although he notified several people that the ice machine was broken, no one fixed it, and he received ice only once. Id. ¶¶ 37–39. Dancy again requested ice and a bottom-tier bunk assignment a week later from an Assistant Health Services Administrator. Id. ¶¶ 41–45. No action was taken. Id. ¶¶ 46–47.

On January 14, 2016, Dancy told Nelson, a nurse practitioner, that he was concerned about climbing stairs due to pain and inability to bend his knee. Id. ¶¶ 48–49. Nelson informed Dancy he did not meet the criteria for a bottom-tier pass, although she refused to disclose those criteria. Id. ¶¶ 51–53. Although he submitted a sick call slip and sent follow-up emails describing his ongoing pain and difficulty navigating stairs, no one reassigned him to a bottom-tier cell or prescribed stronger pain medication. Id. ¶¶ 55–61.

On February 1, 2016, Dancy's right knee buckled as he was descending the stairs. Id. ¶ 63. His surgically repaired left knee then gave out, and Dancy fell on his back and slid down the stairs. Id. ¶ 64. The fall left him with severe knee and lower back pain, and he was taken to

3

Health Services. Id. ¶¶ 65–66. Defendant Fausto ordered x-rays of Dancy's back and both knees, which showed a fractured tailbone. Id. ¶ 69, Exs. H, I, J. Although Dancy spent the next month in a wheelchair, he was not given a pillow to ease the pressure on his tailbone, and he received only one dose of Ibuprofen two days after his fall. Id. ¶¶ 72–74.

An April 2016 MRI showed Dancy had mild cartilage damage in his right knee. Id. ¶¶ 77–78, Ex. M. Nelson noted Dancy should temporarily be reassigned to a bottom tier bunk, and gave him a list of exercises to manage pain. Id. ¶¶ 79–80.

III. FTCA Claims

The FTCA partially abrogates the federal government's sovereign immunity by allowing the government to be sued for torts committed by "any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The government retains immunity, however, against "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." Id. § 2680(a). A plaintiff bears the burden of establishing the FTCA's requirements are met, but "the Government has the burden of proving the applicability of the discretionary function exception." S.R.P. ex rel. Abunabba v. United States, 676 F.3d 329, 333 (3d Cir. 2012).

"As a threshold matter, before determining whether the discretionary function exception applies, a court must identify the conduct at issue." Id. at 332. Dancy alleges the United States "failed to use reasonable care in the establishment of policies and directives for the provision of medical care to prisoners," which caused him to suffer injuries to his knees and tailbone. SAC

4

¶¶ 104–05. He also alleges the United States "carelessly and negligently implemented and/or applied its policies and/or criteria governing" his post-operative treatment plan and bunk assignment. Id. ¶¶ 110–11. Dancy's policy complaints, although broadly phrased, appear to hinge on FDCP's refusal to assign him a lower tier bunk after his surgery.

Next, I must determine: (1) whether the challenged conduct involves "an element of judgment or choice," rather than being prescribed by a federal statute, regulation, or policy; and (2) if so, "whether that judgment is of the kind that the discretionary function exception was designed to shield," meaning "governmental actions and decisions based on considerations of public policy." United States v. Gaubert, 499 U.S. 315, 322–23 (1991) (quoting Berkovitz v. United States, 486 U.S. 531, 536–37 (1988)).

Dancy has cited no policy mandating a lower bunk assignment, and no federal statute or BOP rule imposes nondiscretionary prison bunk assignments. See Edwards v. United States, 660 Fed. App'x 799, 802 (11th Cir. 2016) ("BOP retains discretion over how bed space is assigned among inmates in its facilities"); Wilson v. United States, No. 213-83, 2014 WL 1379963, at *3 (S.D. Ga. Apr. 7, 2014) (bunk placement "is the type of action for which the BOP has wide discretion"); Harper v. United States, No. 5:08-403, 2009 WL 3190377, at *4 (E.D. Ky. Sept. 30, 2009) ("cell assignments are made in the reasoned discretion of the Unit Team"); Paulino-Duarte v. United States, No. 2-9499, 2003 WL 22533401, at *2 (S.D.N.Y. Nov. 7, 2003) ("deciding which inmates get which bunks is clearly discretionary"); see also Cohen v. United States, 151 F.3d 1338, 1342 (11th Cir. 1998) (even if federal statute "imposes on the BOP a general duty of care to safeguard prisoners, the BOP retains sufficient discretion in the means it may use to fulfill that duty to trigger the discretionary function exception").

5

Prison bunk assignment decisions implicate the sort of public policy considerations the discretionary function exception is intended to shield. See Bultema v. United States, 359 F.3d 379, 384 (6th Cir. 2004) (bunk pass and bed rail decisions "both involve the type of across-the-board policy-making judgment that the discretionary function exception was meant to leave to federal administrators, in this case prison administrators"); Edwards, 660 Fed. App'x at 802; Wilson, 2014 WL 1379963, at *3; Harper, 2009 WL 3190377, at *4; Paulino-Duarte, 2003 WL 22533401, at *2; see also Bell v. Wolfish, 441 U.S. 520, 547 (1979) (prison administrators "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security"); Cohen, 151 F.3d at 344 ("second-guessing of the BOP's discretionary decisions is the type of thing avoided by the discretionary function exception, which is designed to 'prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort'") (quoting Gaubert, 499 U.S. at 323).

Dancy argues that "[d]iscovery is necessary to determine whether a written policy exists governing temporary bunk assignments for medical conditions." Pl. Br. (doc. 38) 15. He also asserts the conduct is not discretionary because Nelson told Dancy he did not fit the "criteria" for a bottom-tier bunk assignment. Id. Even assuming criteria or policies exist, they would not render BOP's decision nondiscretionary. See Cohen, 151 F.3d at 1343 (statutory provisions governing BOP prisoner classifications "give the BOP ample room for judgment by listing a non-exhaustive set of factors for the BOP to consider and leaving to the BOP what weight to assign to any particular factor"). Judicial interference in BOP bunk assignments is the type of activity the discretionary function exception was designed to address.

Dancy has not met his burden of persuasion regarding the existence of subject matter jurisdiction. See Gould, 220 F.3d at 178; see also Wilson, 2014 WL 1379963, at *1 (adopting Report and Recommendation granting motion to dismiss because plaintiff "fail[ed] to show that there was a policy in place at FCI-Jesup regarding lower bunk profiles which mandated compliance"). Counts II and III are dismissed for lack of jurisdiction.[1]

IV.    Bivens Claims

"[T]he Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide basic medical treatment to those whom it has incarcerated." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing Estelle v. Gamble, 427 U.S. 97 (1976)). Under Bivens, "victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court." Carlson v. Green, 446 U.S. 14, 18 (1980). To establish a violation of his constitutional right to adequate medical care, Dancy must show: (1) "a serious medical need," and (2) "acts or omissions by prison officials that indicate deliberate indifference to that need." Id. "Mere medical malpractice cannot give rise to a violation of the Eighth Amendment." White v. Napoleon, 897 F.2d 103, 108 (3d Cir. 1990).

---

[1]    Counts II and III also may be barred because Dancy's administrative claims did not raise concerns about FDCP policies. See Def. Br. 8; see also Roma v. United States, 344 F.3d 352, 362 (3d Cir. 2003) (administrative exhaustion requirement "is jurisdictional and cannot be waived"). Courts have jurisdiction over FTCA claims only if the plaintiff "first presented the claim to the appropriate Federal agency," 28 U.S.C. § 2675(a), in a manner "sufficient to enable the agency to investigate," Roma, 344 F.3d at 362. Dancy argues his pro se filings should be liberally construed, and his references to seeking a bottom-tier bunk were enough to put FDCP officials on notice to investigate their bunk assignment policies. Pl. Br. 12–13. Dancy's administrative claims raised concerns about his post-surgery medical care. See Def. Br. 5, Ex. A. Those claims, however, did not alert BOP "that Dancy intended to facially challenge any policy." Id. at 10; see also id. at Ex. A, docs. 4, 6.

7

A. Defendant Nelson

Asserting that his "vulnerability following his surgery constituted a serious medical need," Dancy alleges Nelson's failure to assign him a lower-tier bunk constituted "deliberate indifference" that foreseeably led to further injury and unnecessary suffering. SAC ¶ 117; see also Pl. Br. 19 ("Dancy alleges that Nelson prevented him from following his surgeon's written treatment plans for post-surgery rehabilitation, and that the severe pain of which he complained should have alerted her to the potential consequences of denying medical treatment.").

Dancy's orthopedic surgeon did not recommend an overly restrictive post-surgery regime. See SAC, Exs. A, B. Although he believed Dancy would likely not resume regular activities for two weeks, the surgeon noted Dancy could walk after surgery unless otherwise instructed. Dancy was to ice his knee regularly, take aspirin daily, and wear an ace bandage as needed. His post-surgery goals were to protect his knee from overstress, prevent loss of motion, and activate his quadriceps muscle. The guidelines did not require a lower-tier bunk.

Nelson examined Dancy's left knee six days after his surgery. Although Dancy reported severe pain, Nelson recorded his pain as 4/10, and noted minimal swelling with no redness or warmth.[2] Given the surgeon's moderate recommendations and Nelson's exam, Nelson's decision not to assign Dancy a bottom tier bunk or disclose the criteria for one does not state a claim for cruel and unusual punishment. Nelson did not refuse to examine Dancy, see Spruill v. Gillis, 372 F.3d 218, 237 (3d Cir. 2004), or insist on continuing treatment she knew was "painful, ineffective, or entailed substantial risk of serious harm," White, 897 F.2d at 103. Instead, she examined Dancy's knee, provided him with aspirin and bandages, and reviewed rehabilitation exercises with him. Moreover, Dancy was injured after his right knee buckled

---

[2] Dancy objects to Nelson's 4/10 pain assessment, see SAC ¶ 50, but does not dispute her medical findings.

8

walking down stairs. Nelson, who examined his surgically repaired left knee, could not have anticipated that Dancy's bunk assignment would lead to the injury he sustained. Dancy's allegations fail to state a claim that Nelson was deliberately indifferent to Dancy's serious medical needs. See Rouse, 182 F.3d at 197.

B. Defendant Fausto

Dancy alleges Fausto "improperly deprived him of medication and/or other medical treatment" by waiting two days after Dancy's fall to "write an order for a single dose of Ibuprofen," even though Dancy had reported severe pain.[3] SAC ¶¶ 67, 74, 116. Citing the medical records attached to Dancy's complaint, Defendants counter that "Fausto prescribed Dancy a two-week's supply of Motrin approximately one hour after Dancy alleges he fell." Def. Br. 19 (citing SAC, Ex. H, at 2). Dancy responds that "Fausto did nothing to ensure that Dancy received medication promptly." Pl. Br. 21. Even assuming Fausto had a duty to ensure his prescription reached its intended recipient, as the complaint alleges, medical negligence does not give rise to Eighth Amendment liability. White, 897 F.2d at 103. Dancy fails to state a claim that Fausto, who examined him and prescribed medication for his pain, was deliberately indifferent to Dancy's serious medical needs.

C. Defendant Dalmasi

"[T]o hold a supervisor liable because his policies or practices led to an Eighth Amendment violation, the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was

---

[3] Insofar as Dancy's claims are based on lack of ice, although he says he "complained to several individuals" about the broken ice machine, including two not named as defendants, he does not allege that Nelson or Fausto were aware of the ice situation. See SAC ¶¶ 37–43.

9

created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." Beers-Capitol v. Whetzel, 256 F.3d 120, 134 (3d Cir. 2001). Dancy fails to establish these prongs.

Dancy fails to point to an existing policy. Instead, he asserts that Dalmasi "failed to establish policies and procedures to ensure that [Dancy's] treatment and rehabilitation plans" could be implemented post-surgery, which created "an unreasonable risk that [Dancy's] constitutional right to adequate medical care would be violated." SAC ¶¶ 125–26. He alleges his injury was a direct result of Dalmasi's practices, including Dalmasi's failure to: (1) "properly train and supervise FDCP medical personnel so as to properly recognize inmates with conditions necessitating a cell on the Bottom Tier"; (2) "properly care for inmates recovering from surgery"; and (3) "institute appropriate policies and procedures for transfer of inmates with serious medical conditions to cells on the Bottom Tier." Id. ¶ 128.

Even assuming Dancy's allegations sufficiently specify challenged policies, he fails to plead facts to establish that Dalmasi was aware of, or indifferent to, an unreasonable risk of a constitutional violation. The post-surgery instructions did not put Dalmasi on notice that Dancy would likely suffer serious harm if he were required to use stairs to reach his bunk. Moreover, Dancy has not pled facts to establish that he suffered a constitutional injury. See supra Section IV, A–B. Because Dancy fails to state a claim for supervisory liability, Count V must be dismissed.[4]

An appropriate Order follows.

---

[4] Because I find Defendants' motion should be granted based on their FTCA and Bivens arguments, I do not address their PLRA arguments.